**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

```
*********************************************
In Re:                                *      Chapter 11
                                      *      Case No. 14-11527-__
American Resource Staffing Network, Inc.,   *
                                      *      Hearing Date: None, Unless
                                      *           Required By Court
                Debtor(s)             *
*********************************************
```

**EMERGENCY EX-PARTE MOTION OF CHAPTER 11 DEBTOR-IN-POSSESSION PURSUANT TO §363 and 552(b)(2) FOR AN ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION, INCLUDING POST-PETITION LIENS**

NOW COMES American Resource Staffing Network, Inc., ("Debtor" or "Staffing"), by its attorneys Cleveland, Waters & Bass, PA, and moves on an emergency ex parte basis pursuant to 11 U.S.C. §363, Federal Bankruptcy Rule 4001 and Local Bankruptcy Rule 4001-2 for approval and authorization for Debtor to use cash collateral, as such term is defined in §363(a), and to grant adequate protection including post-petition liens as follows:

**BACKGROUND / JURISDICTION**

1.      Debtor filed a voluntary petition under title 11 Chapter 11 of the United States Code on July 31, 2014 ("Petition Date").  Since the Petition Date Debtor has continued to operate its business and manage its property as a debtor-in-possession pursuant to §1107 and §1108 of the Bankruptcy Code.   As of the date of this motion, no creditors committee has been appointed in this case.

2.      This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §1334 and this matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(M).   The Debtor consents to the entry of a final Order by the Bankruptcy Court on this Motion.

1

3.      The Debtor is a New Hampshire corporation with its principal place of business located at 165 South River Road, Unit C, Bedford, NH 03110.   The Debtor has been in business for over 27 years.

4.      Debtor is the owner and operator of a large staffing business which provides workers to a variety of businesses in New Hampshire and Massachusetts in a variety fields, particularly the food industry.   Debtor's gross sales are approximately $33 million dollars a year. The Debtor is managed by related Chapter 11 Debtor American Resource Network, Inc. ("Network"), which is solely a management company. The Debtor provides quality temporary employment, temporary to permanent placements and direct placements to dozens of companies, both large and small, in this area of New England.   The Debtor, and its principal, Richard Purtell, are well-known and respected members of the staffing industry.   The Debtor has a program to assist military personnel re-entering the workforce with securing employment. Upon the Petition Date the Debtor supplied approximately 1,023 workers to other businesses, but that number fluctuates from week-to-week.   Summer tends to be the slowest season for the Debtor's business, with business expected to increase in the fall.

5.      Currently, the Debtor has no secured creditors other than the Internal Revenue Service ("IRS"), which has a lien on all of the Debtor's assets for various employment taxes owed. Amounts owed to the IRS for various employment taxes total approximately $7,080,806.95 (Network owes the IRS another (approximately) $1,739,485.48) for accruals over a 10 year period. The IRS also has a lien on the Debtors' principal's assets.   There is no consensual lien in Debtor's cash collateral.   Debtor's debt to unsecured creditors totals approximately $3 million.   Debtor currently has approximately 1,023 employees that are temped out to Debtor's clients.

6.     The Debtor's sole source of income is the operation of the staffing business. The Debtor provides employees to various businesses at an agreed price, usually with a profit margin of approximately 12%-15%, then pays the employees and keeps the profit margin to operate its business and Network's business.   Network charges the Debtor a management fee (no profit) to cover its expenses.

7.     Prior to the Petition Date the Debtor has been involved in a vicious cycle of rising employment tax obligations, on both the state and federal level, and an inability to become current on past-due obligations.   The Debtor, who is a large and respected staffing employer in the region, has seen its tax obligations grow and grow, due in large part to a tough economy (resulting in fewer requests for employees from third party employers, and resulting in growing unemployment tax obligations to the Debtor) and in some part due to repeated self-help levy measures by the taxing authorities, particularly the Commonwealth of Massachusetts.   The Debtor has tried to work with the taxing authorities to pay down its obligations, but its business tends to be cyclical, and when the Debtor periodically cannot honor payment arrangements on past-due amounts (and even when it is honoring such arrangements), the Debtor has suffered unexpected adverse events such as unannounced sweeps of its bank account by the MA DOR – to the tune of several hundred thousand dollars, which have left the Debtor scrambling to make its current weekly payroll alone, and forces its unpaid state and federal tax obligations even higher.

8.     The latest blow to the Debtor is the ongoing problems with regional supermarket powerhouse Market Basket and seasonality.   The Debtor supplied workers to the suppliers of produce for Market Basket and earned approximately $30,000 per week from that contract. Now that Market Basket is not purchasing the produce (and the season has slowed) and there are

3

no workers needed by the supplier, the Debtor's business is down (along with its profit margins), at least on a temporary basis, upon the loss of this lucrative contract.

9.     The Debtor is unable to continue operations without a mechanism in place to allow the Debtor to fund payroll and tax obligations currently (which it can do on its current income – see Budget, attached as Exhibit A) while making arrangements to pay down and/or settle and/or satisfy its past-due tax obligations.   The Debtor has a buyer for its business (a relative of the Debtor's principal [his daughter or her nominee]) which should allow some recovery for creditors (so that over 1,000 people do not lose their jobs) and at least the IRS can be paid down somewhat on its lien. Bankruptcy counsel has not met with the Buyer yet, to finalize and confirm the Buyer's offer remains on the table post-petition, because of the immediate need to file before another levy.   The IRS is aware of and is considering the pre-petition offer.

## CURRENT CIRCUMSTANCES AND CASH COLLATERAL ANALYSIS

10.     Obviously, for the Debtor to maintain value for all involved and honor its commitments to its employees and third party businesses, the Debtor needs to operate.   The Debtor has been in contact with the IRS, but since amount are due the IRS and State of Massachusetts, and payments are in arrears, the possibility of levy exists at any time. Levy would put the Debtor out of business.

11.     The Debtor has prepared a combined budget for the Debtor and Network, attached as Exhibit A to Richard Purtell's Affidavit Exhibit B which states that Debtor anticipates net operating revenues of approximately $2,270,000.00 (including an estimated $350,000.00 in cash on hand on the Petition Date) and expenses of $2,006,000.00 for the 60 day period from the Petition Date through September 30, 2014.     Debtor's income is expected to increase during the

month of September, resulting in remaining cash in the amount of $355,800.00 at the end of September, after an expected cash remainder of $263,800.00 at the end of August, 2014. Receivables (which are all extremely short term [21 days or less] are similar each month) and are expected to remain that way through the end of September. Debtor's budget indicates stability of cash collateral, after meeting its current obligations, including current tax obligations. All expenditures are necessary for the operation of the business.

12.     Debtor shall provide the following adequate protection to the IRS, which is outlined in more detail in the attached order:

In addition to paying current federal and state employment taxes to going forward and all other associated employee expenses, the Debtor shall provide adequate protection to the Lender in the form of a replacement lien in Debtor's post-petition cash collateral, consistent with Lender's pre-petition lien in such collateral.   Debtor shall provide monthly reports as provided to the U.S. Trustee's Office.

13.     Where a lender asserts a lien on "soft collateral" such as accounts receivable, a replacement lien may constitute part of the lender's adequate protection so long as, "the level of such a fluctuating base of items of collateral that are constantly cycling through different shapes and forms, as the business operations continues, will in fact remain at the same magnitude (in terms of ongoing operational values) during the relevant period of debtor-in-possession business operations..." In Re Dynaco Corp., 162 B.R. 389, 394 (Bankr. D.N.H. 1993).   Debtor believes that the adequate protection offered herein is satisfactory under 11 U.S.C. §361, §363, §552(b)(2) and related case law.

## EMERGENCY NEED FOR RELIEF AND USE OF CASH COLLATERAL

14.     Both Staffing and Network are service businesses which employ many people (Staffing 1,023 persons; Network 41 persons).   Neither Debtor can operate if it cannot use its cash to pay its employees and service its customers.   Cash is required not only to pay post-petition administrative expenses occurring in the ordinary course of business, but to service existing customers and employees so that Debtor will not lose its customer base.   Based upon the value of Petition Date collateral, the need for immediate usage of cash, the adequate protection provided, in the form of both current payments and a replacement lien and the likelihood the cash collateral will remain stable or increase post-petition, the Debtor believes it is entitled to an order authorizing the emergency use of cash until the date scheduled by the Court for final hearing on the use of cash collateral to be scheduled within thirty days from the date of this Motion.   Debtor is only requesting use of cash for a maximum of 30 days pursuant to this motion.

15.     If the Debtor is not permitted immediate ex parte use of cash collateral, the Debtor will be forced to cease operations immediately.   It will not be able to pay its employees or perform its contracts.   Debtor's business, its creditors, including the IRS, other secured and unsecured claim holders would be irreparably harmed if Debtor is not permitted the emergency use of cash as requested herein.   Entry of this Order will minimize disruption of the Debtor's business and operations as a going concern and will preserve the assets of the Debtor's estate.

16.     The Debtor reserves the right to challenge the amount, validity, priority and avoidability of all secured claims listed above at a later date and nothing in this motion should be construed as a waiver of that right.

## **NOTICE**

6

17.     Representations of Debtor's Counsel: Debtor will serve this Motion and Emergency Order on all lien holders and the 20 largest unsecured creditors, the US Trustee all taxing authorities and other relevant state agencies.

WHEREFORE, American Resource Staffing Network, Inc. respectfully requests this Court:

A.     Grant its emergency request for immediate authorization to use cash collateral on the terms and conditions contained in the motion and the Budget; and

B.     Grant such other and further relief as this Court deems just and equitable.

Respectfully Submitted,

American Resource Staffing Network, Inc.,
Chapter 11 Debtor-in-Possession
By its attorneys,
Cleveland, Waters & Bass, PA

Dated: July 31, 2014            By:     _/s/ Steven M. Notinger_
                                        Steven M. Notinger (#03229)
                                        Two Capital Plaza, 5th Floor
                                        P.O. Box 1137
                                        Concord, NH 03302-1137
                                        (603) 224-7761
                                        notingers@cwbpa.com


## CERTIFICATE OF SERVICE

I, Steven M. Notinger, certify that I have as of this date mailed the enclosed Emergency *Ex Parte* Motion to the following parties by CM/ECF, or by first class mail, postage prepaid on the parties on the attached Regular Mail Service List, as indicated:
Via CM/ECF to the following parties:

Office of the U.S. Trustee
USTPRegion01.MR.ECF@usdoj.gov


Dated: July 31, 2014            By:     _/s/ Steven M. Notinger_
                                        Steven M. Notinger (#03229)