UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

In re

| | |
|---|---|
| American Resource Staffing Network, Inc. | Chapter 11 |
| American Resource Network, Inc. | Case No. 14-11527-BAH |
| Debtors | Case No. 14-11529-BAH |
| | Jointly Administered |

**Hrg: 9/30/2014 @ 1:30 p.m.**

**MOTION OF UNITED STATES TRUSTEE FOR ORDER
AUTHORIZING APPOINTMENT OF CHAPTER 11 TRUSTEE
OR IN THE ALTERNATIVE CONVERTING CASE(S) TO CHAPTER 7 OR
DISMISSING CASES**

Pursuant to 11 U.S.C. §§ 1104(a) and 1112(b)(4), William K. Harrington United States Trustee, by his attorney, respectfully requests that the Court issue an Order authorizing the appointment of a chapter 11 trustee in these jointly administered cases, or in the alternative, an Order converting the cases to chapter 7 or dismissing the cases. In support thereof, the United States Trustee respectfully submits:

### I.     PRELIMINARY STATEMENT

The United States Trustee seeks an order authorizing the appointment of a disinterested fiduciary to liquidate the assets of these jointly administered Debtors. Cause exists for the appointment of an independent fiduciary given the Debtors' gross mismanagement which led to the Debtors collectively owing in excess of $10 million in federal income taxes and more than $1 million in unemployment compensation taxes, resulting in liens against the Debtors' assets and levies on the Debtors' bank accounts. The Debtors' goal in filing chapter 11 is to move forward with the immediate sale of substantially all of the Debtors' assets to the president's daughter through her company, Wicked Staffing Solutions, LLC, or its nominee, which Motion is scheduled

for hearing on September 30, 2014. The Debtors do not seek to reorganize under chapter 11 and it is not clear how the remaining assets of the companies will be liquidated following the proposed sale.

## II.    JURISDICTION

1. This is a contested matter in which the United States Trustee seeks an order authorizing the appointment of a chapter 11 trustee in these jointly administered cases pursuant to 11 U.S.C. § 1104 or in the alternative an order converting these cases to cases under chapter 7 or dismissing the cases pursuant to 11 U.S.C. § 1112(b). It is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(J). The statutory predicates for relief are 28 U.S.C. §§ 586(a)(3), 586(a)(8) and 1930(a)(6), 11 U.S.C. §§ 1104 and 1112(b).

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire" dated January 18, 1994 (DiClerico, C.J.).

## III.    PROCEDURAL AND FACTUAL BACKGROUND

3. American Resource Network, Inc. ("**Network**") is a corporation formed on October 8, 1996 under the laws of the Commonwealth of Massachusetts, with a principal place of business according to its most recent Annual Report at 45 Middle Street, Lowell, Massachusetts. American Resource Staffing Network, Inc. (**"Staffing"**) is a corporation formed on April 24, 2000 under the laws of the State of New Hampshire, with a principal place of business at 165 South River Road, Unit C, Bedford, New Hampshire.[1]

---

[1] The Debtors' federal income tax returns use an address for the companies of 339 Main Street, Nashua, New Hampshire. The Debtors maintain a "satellite office" at this location and the landlord is the Dorothy Realty

4. On July 31, 2014, ("**Petition Date**"), Network and Staffing each filed skeleton petitions with this Court seeking relief under chapter 11 of the United States Bankruptcy Code. On motion of the Debtors, the Court issued an Order on August 1, 2014 jointly administering the two cases, with Case No. 14-11527-BAH designated as the lead case.  *See* Court Docket No. 12.

5. On August 22, 2014, following an extension granted by the Court, the Debtors filed the balance of their Schedules and Statement of Financial Affairs.  *See* Court Docket Nos. 31 and 35 ("**Schedules**").

6. According to the Debtors' Statement of Financial Affairs, Mr. Richard Purtell ("**Purtell**") is sole shareholder in each company.  He also is the President, Treasurer and Clerk, and sole Director of each company.  His daughter is Ms. Vicki Giuffre, who is also an employee of Network.

7. Staffing operates a company that provides temporary labor to a variety of businesses in New Hampshire and Massachusetts, particularly in the food or light industry fields. *See* Debtors' Motion to Use Cash Collateral.  Court Docket No. 24, ¶4.  At the time of the filing Staffing supplied 1023 workers to other businesses.  *Id.*

8. Staffing had gross income of $33.7 million in 2013 and $35.2 million in 2012.  Its gross income for the first 7 months of 2014 was $15.23 million.  Staffing SOFA, ¶1. Staffing operated at a loss in 2011 and 2012.  Its 2013 federal income tax return has not yet been filed.

9. The management of the employee staffing business is done by Network, which at the time of the filing had approximately 40 employees.  Network had gross income of $4.1 income in 2013 and $3.9 million in 2012.  Its gross income for the first six months of 2014 was

Trust, an entity controlled by Mr. Purtell, president of both Debtors.  The monthly rent for this "satellite office" is $4200 per month.  *See* Staffing Schedule G.

$2.2 million.   Its only source of income is derived from Staffing.

10.     According to its Schedules and Statement of Financial Affairs, Staffing owes the IRS $7,080,806, which claim is reportedly secured by liens on assets of Staffing.[2]  *See* Staffing Schedule D.  *See also* Debtors' Motion to Use Cash Collateral, Court Docket Nos. 3, 24.  Staffing also owes nearly $2 million in priority taxes to various state taxing authorities.[3]  Unsecured claims are scheduled for $3.251 million.   *See* Staffing Schedules E and F.

11.     Network reports that the IRS is a secured creditor, owed $1.739 million.  *See* Network's Schedule D.   Priority taxing authorities are owed $39,000.   Unsecured creditors in the Network's case are owed $44,961.   *See* Network's Schedules E and F.

12.     Prior to the filing, Staffing's bank account had been seized by the Commonwealth of Massachusetts, Department of Unemployment Compensation **("DES")** on November 28, 2013, and by the Commonwealth of Massachusetts Department of Revenue **("DOR")**, on May 1, 2014, resulting in seizures of $133,617 and $103,844 respectively from Staffing's account at Salem Five Cents Savings Bank.   Staffing reported that it stopped depositing funds to its Salem Five Cents Savings Bank account on July 7, 2014 and that "the account was closed at the request of bank after several unannounced sweeps by MA taxing authorities."   *See* Staffing SOFA ¶¶10, 11.

13.     Staffing noted in Schedule B of its Schedules that it had $340,000 in the "sister non-debtor's account" on the date of the chapter 11 filing.   *See* Staffing, Schedule B.   On

---

[2] On September 8, 2014, the IRS filed proofs of claim in both Staffing and Network.   *See* Staffing, IRS Claim No. 18; Network, IRS Claim No. 2.   The Staffing claim indicates a total of $9.512 million is owed and refers to numerous IRS liens recorded from November 4, 2005 through July 15, 2014.   The Network claim indicates a total of $1.763 million is owed and refers to numerous liens recorded from September 29, 2008 through May 13, 2014.

[3] Commonwealth of Massachusetts, Department of Unemployment Security, has filed two proofs of claim asserting it is a secured creditor.   *See* Staffing Claim No. 1 ($1,237,581) and Claim 2 ($607,201 and other costs).

information and belief $340,000 of Staffing's funds were held in the non-debtor account titled in the name of Premier Medical Staffing Network, Inc, another company owned by Purtell.[4]

14. According to the Debtors' responses to certain questions on their Schedules and Statement of Financial Affairs, Purtell's compensation, withdrawals and loans, and those of his companies and trusts, were as follows

|  | **Staffing** | **Network** |
|---|---|---|
| Loan to Purtell "for various purposes, including payments to former spouse under divorce decree" *See* SOFA ¶23c | $587,133 |  |
| Compensation paid to Purtell in the 12 months prior to the chapter 11 filing |  | $240,000[5] for 12 months prior to the chapter 11 filing |
| Loans Due to Staffing from Purtell, Schedule B 16 | $1,716,916 |  |
| Intercompany debt due from Purtell's company, Premier Medical Staffing, Inc. | $950,000 |  |
| Repayment of loan to Purtell's Dorothy Realty Trust in 12 months prior to the chapter 11 filing[6] | $45,000 |  |

---

[4] This company was formed by Mr. Purtell on January 14, 2003 under the laws of the State of New Hampshire. At the § 341 meeting on August 27, 2014 Purtell testified that Premier Medical is current on all of its obligations, including taxes, although Premier owes Staffing $950,000 (characterized as "intercompany debt"). *See* Staffing, Schedule B. While he is the owner of Premier, Purtell testified that the manager, Kirk Marshall, runs Premier Medical Staffing and the company is "just starting to turn a profit."

[5] Mr. Purtell testified that his salary is $300,000 per year but because he was out on disability leave with back surgery for approximately 12 weeks, the actual compensation paid in the 12 months prior to the filing was $240,000.

[6] *See* Staffing, SOFA ¶ 3c. This does not include the rent payments for the Debtors' satellite office in Nashua, New Hampshire.

5

|  | **Staffing** | **Network** |
|---|---|---|
| Payments made to Premier Medical Staffing, Inc. in 12 months prior to chapter 11 filing | $575,000[7] |  |
| **Total** | **$3,874,049** | **$240,000** |

15.     At the § 341 meeting on August 27, 2014, Purtell testified that on average, he received compensation of approximately $750,000 per year for the last 3 years and that the companies did not make a profit.

16.     According to Staffing's Schedules, Premier owes Network $950,000.  *See* Staffing Schedule B.

17.     According to Network's Schedules, in the year prior to the filing Network made payments of $25,920 to Jody Wheeler, Mr. Purtell's daughter, who according to Mr. Purtell was not a regular employee of Network.  *See* Network SOFA, ¶3c.  Similarly, Network paid compensation to Mr. Purtell's ex-wife in the amount of $27,840 in the year prior to the filing, and Mr. Purtell conceded at the § 341 meeting on August 27, 2014 that she was not a regular employee of Network.  *See* Network SOFA, ¶3c.

18.     On September 8, 2014, the Debtors filed a Motion to sell substantially all of the Debtors' assets to Wicked Staffing Solutions, LLC, an entity formed on January 21, 2014 under the laws of the Commonwealth of Massachusetts by Ms. Vicki Giuffre, Mr. Purtell's daughter. The Court has been asked to approve the form of bid procedures at a hearing scheduled for September 9, 2014 at 1:30 p.m.     Under the proposed sale, Wicked Staffing Solutions, LLC will pay $2.4 million for Staffing's customer list and other assets payable over a five year period, with

---

[7] On information and belief $340,000 of this amount was available to the Debtors as of the date of the filing for Staffing's payroll due for the week of August 1, 2014.  *See* Staffing Schedule B.

the first payment not made until January 1, 2015. Also included in the proposed sale is the Employee Receivables, the Workers' Compensation Refund, the Nexus Judgment, the Leases, the Furnishings and Bank Accounts. *See* Docket No. 61. After the sale, "Purtell will no longer be in charge of Staffing or its financial transactions, and he will not be in charge of the Buyer…. Purtell will not continue his employment with the Buyer or any other successful bidder if the Buyer [Wicked Staffing Solutions, LLC] is not the successful bidder for Staffing's Assets." *See* Court Docket No. 61-1, page 6. It is not clear in the Motion to Sell how the assets of Staffing will be liquidated following the sale but the Motion indicates Network will seek to dismiss or convert its case to chapter 7 after the proposed sale to Wicked Staffing Solutions, LLC, if authorized.

## IV.    ARGUMENT

**A. The Court Should Enter an Order Directing the United States Trustee to Appoint a Chapter 11 Trustee Based on the Need for a Disinterested Fiduciary to Investigate and Liquidate Insider Claims and the Pre-Petition Mismanagement of the Debtors' Affairs.**

19. As set forth herein, ample cause exists for the appointment of an independent fiduciary under chapter 11 or chapter 7 to undertake the administration and liquidation of the Debtors' estates.

    **i.    Applicable Legal Standards**

        a.    <u>Appointment of a Chapter 11 Trustee</u>

20. Section 1104(a)(1) requires the Court to appoint a chapter 11 trustee upon a showing of "cause," including "fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause." 11 U.S.C. § 1104(a)(1).

7

21. Section 1104(a)(2) mandates the appointment of a chapter 11 trustee if doing so "is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor."  11 U.S.C. § 1104(a)(2).

22. While 11 U.S.C. § 1104(a)(1) addresses management's pre and post-petition misdeeds or mismanagement, subsection (2) provides the Court with "particularly wide discretion" to appoint a trustee, even absent wrong doing or mismanagement.  *In re Bellevue Place Assocs.,* 171 B.R. 615, 623 (Bankr. N.D. Ill. 1994).  Where the Court finds either that cause exists or that appointment is in the interest of the parties, an order for the appointment of a trustee is mandatory.  *Official Comm. of Asbestos Pers. Injury Claimants v. Sealed Air Corp. (In re W.R. Grace & Co.)*, 285 B.R. 148, 158 (Bankr. D. Del. 2002).

23. The Court's determination of whether there is cause to appoint a chapter 11 trustee is fact-intensive and, as such, should be made under the preponderance of the evidence standard after considering the totality of the circumstances on a case-by case-basis.  *In re Costa Bonita Beach Resort, Inc.*, 479 B.R. 14, 44 (Bankr. D. P.R. 2012); *Tradex Corp. v. Morse (In re Tradex Corp.)*, 339 B.R. 823, 829-830 (D. Mass. 2006).

24. In making that determination, courts should be cognizant of the fact that "section 1104 represents a protection that the Court should not lightly disregard or encumber with overly protective attitudes towards debtors-in-possession."  *In re V. Savino Oil & Heating Co., Inc.,* 99 B.R. 518, 525 (Bankr. E.D. N.Y. 1989).  It is not necessary to find fault on the part of the debtor before authorizing the appointment of a chapter 11 trustee under 11 U.S.C. § 1104(a)(2).  *In re Eurospark Industries, Inc.*, 424 B.R. 621 (Bankr. E.D.N.Y. 2010).

      b.      <u>Conversion to Chapter 7 or Dismissal of Cases</u>

25. Pursuant to 11 U.S.C. § 1112(b), "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or examiner is in the best interests of creditors and the estate."  11 U.S.C. § 1112(b).

26. Section 1112(b)(4) provides a non-exhaustive list of factors constituting cause for conversion or dismissal.  *In re Gonic Realty Trust,* 909 F.2d 624, 626-27 (1st Cir. 1990).  The list is nonexclusive; "the court may consider other factors as they arise and use its powers to reach appropriate results in individual cases."  *Id.*  "In construing what other factors are relevant, the bankruptcy court must use its 'sound judgment' and make its determination with the best interests of creditors as its highest goal."  *In re PM Cross, LLC*, 494 B.R. 607, 617 (Bankr. D. N.H. 2013)(citing *In re Gonic Realty Trust,* 909 F.2d at 626-627).

27. Once a movant establishes that cause for dismissal or conversion exists, the burden shifts to the opposing party to specifically identify unusual circumstances that show dismissal or conversion would not be in the best interest of the estate and its creditors, and that there is a reasonable likelihood that a plan will be confirmed within a reasonable period of time.  *See* 11 U.S.C. § 1112(b)(2).  *See also In re Pittsfield Weaving Co.*, 393 B.R. 271, 273-274 (Bankr. D. N. H. 2008), *citing* 11 U.S.C. §1112(b)(1) and *In re AmeriCERT, Inc.*, 360 B.R. 398, 401 (Bankr. D. N. H. 2007) ("Prior to its amendment, the statute provided that a court 'may' dismiss the case upon finding cause, but amended section 1112(b) provides that a court 'shall' dismiss if cause is found, absent unusual circumstances.").

> ii. **The Court Should Appoint an Independent Chapter 11 Trustee under 11 U.S.C. § 1104(a)(2) Due to Management's Material and Incurable Conflicts of Interest.**

28. Under 11 U.S.C. § 1107(a), a chapter 11 debtor-in-possession assumes the rights, powers and obligations of a trustee. *In re Schatz*, 402 B.R. 482, 485 (Bankr. D. N.H. 2009). Thus, a debtor-in-possession is a "statutory fiduciary of its own estate." *In re Rancourt*, 207 B.R. 338, 360 (Bankr. D. N.H. 1997). A chapter 11 debtor has a duty, among others, to examine and object to claims, exercise avoidance powers if it would likely benefit creditors, and maximize the value of the estate. *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3rd Cir. 2003). In the present case, the Debtors' principal "wear[s] 'so many hats' that it may be impossible for [him] to fulfill the fiduciary duties of a debtor in possession." *In re SunCruz Casinos, LLC*, 298 B.R. 821, 831-832 (Bankr. S.D. Fla. 2003). He is president of both Debtors. His realty trust is one of the Debtors' landlords for a "satellite office" in Nashua while the Debtors' office is in Bedford, New Hampshire. Purtell personally owes the Staffing $1.7 million and his other company, Premier Medical Staffing, owes Staffing $950,000. He negotiated the contract for the sale of the Debtors' customer list to his daughter through her company, Wicked Staffing Solutions, LLC, for $2.4 million, which may pay only a fraction of the amount due to the IRS and nothing for any other creditors.

29. The appointment of an independent fiduciary is necessary where, as here, the Debtors' manager suffers from material conflicts of interest which give rise to the presumption

10

that he will be unable to conduct unbiased investigations and make impartial decisions in pursuing claims on behalf of the Debtors.  *In re Ridgemour Meyer Props., LLC*, 413 B.R. 101, 113 (Bankr. S.D. N.Y. 2008).   He negotiated a contract for the sale of substantially all of the Debtors' assets to his daughter, through her nominee, Wicked Staffing Solutions, LLC.   Eighty four percent (84%) of Staffing's receivables consists of money borrowed from Purtell or transferred to Purtell's other company, Premier Medical.   Because the IRS has personally assessed Purtell and recorded significant liens against his assets, the estates' ability to recover these obligations from him is not clear.

      30.     There is no ongoing reorganization contemplated for the Debtors.   Following the proposed sale, Purtell will no longer be in charge of Staffing and he will seek to dismiss or convert Network.

      31.     In liquidating the assets of the estates, the Debtors have a fiduciary duty to maximize the return on its accounts receivable and pursue chapter 5 actions if it would benefit the estates.   There is an inherent conflict of interest in allowing Purtell to stay at the helm now.  Whether the amounts due the estates from insiders can be collected is anything but certain.   *In re Fiesta Homes of Georgia Inc.,* 125 B.R. 321, 326 (Bankr. S.D. Ga. 1990)(holding that chapter 11 liquidation plan which required recovery of preferences from insiders who were close family members of debtor's current management, gave rise to conflicts of interest warranting appointment of trustee and conversion of case to chapter 7).

      32.     The conflict of interest inherent with Purtell negotiating the sale of the Debtors' assets to Ms. Giuffre, and bringing claims against himself and his other companies or entities dictates the appointment of an impartial fiduciary, whether through appointment of a chapter 11

trustee or conversion of the Debtor's case to chapter 7. *See e.g. In re Graf Bros., Inc.*, 19 B.R. 269, 270 (Bankr. D. Me. 1982)(conversion to chapter 7 is appropriate in chapter 11 liquidation case in light of potential conflict of interest between debtor and those with whom debtor is dealing during liquidation); *In re Bowman*, 181 B.R. 836, 845 (Bankr. D. Md. 1995)(inability to fulfill fiduciary duties due to conflict of interest is itself cause to appoint a trustee or convert case to chapter 7). *See also In re L.S. Good & Co.,* 8 B.R. 312 (Bankr . N.D. W.Va. 1980)(appointing trustee due to potential conflicts of interest between management and estate); *In re Nautilus of New Mexico, Inc.,* 83 B.R. 784 (Bankr. N.M. 1988)(appointing trustee due to co-owner president's conflict of interest); *In re Microwave Prods. of Am., Inc.,* 102 B.R. 666, 676 (Bankr. W.D. Tenn. 1989)(chapter 11 trustee appointed where debtor was not in a "strong posture" to pursue possible claims due to conflicts of interest).   Since the "causes of action against insiders is such a significant asset of this estate and since there are no business operations requiring current management,…the appointment of a trustee to pursue those actions is warranted and in the best interests of creditors."  *In re PRS Ins. Group, Inc.*, 274 B.R. 381, 388-389 (Bankr. D. Del. 2001).

> iii. **The Pre-petition Mismanagement of the Debtors Constitutes Cause for the Appointment of an Independent Trustee or Conversion or Dismissal of Cases.**

33. Sufficient grounds exist to appoint a trustee in the Debtors' cases due to the gross mismanagement of the Debtors prior to the filing. For years the Debtors have failed to remit all required payroll and unemployment taxes resulting in liens and seizures of company bank accounts. The unwillingness or inability of the Debtors' management over many years to operate in accordance with applicable law is the reason for these bankruptcy filings and in itself constitutes grounds for the appointment of a trustee.

\* \* \*

WHEREFORE, the United States Trustee requests that the Court issue an Order authorizing the United States Trustee to appoint a chapter 11 trustee, or in the alternative, an Order converting the cases to chapter 7 or dismissing the cases, and for such other and further relief as is just.

        Respectfully submitted,

        WILLIAM K. HARRINGTON
        United States Trustee

By:    /s/ Geraldine Karonis
        Geraldine Karonis
        Assistant U.S. Trustee
        Office of U.S. Trustee
        1000 Elm Street Suite 605
        Manchester, NH 03101
        (603) 666-7908
        Bnh 01853

Dated: September 8, 2014

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this September 8, 2014, I caused to be served a copy of the foregoing Motion and proposed Order(s) as follows:

**Notice will be served on counsel of record via CM/ECF**:

    Steven M. Notinger, Esq.
    Deborah Notinger, Esq.
    Walter Maroney, Esq.
    Daniel Sklar, Esq.


                                      /s/ Geraldine Karonis
                                      Geraldine Karonis

Dated: September 8, 2014