UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

In re:

AMERICAN RESOURCE STAFFING NETWORK INC.

AMERICAN RESOURCE NETWORK INC.

      Debtors

Chapter 11
Case No. 14-11527-BAH
          14-11529-BAH

(Jointly administered)

### EXAMINER'S REPORT

Now comes Jennifer Rood, Examiner ("the Examiner"), pursuant to this Court's Order dated September 16, 2014 [DE#87] Directing the United States Trustee to Appoint an Examiner ("the Examiner Order"), and submits her report relative to the marketing of assets under the Bid Procedures order (DE#138) and the sale process.

**I. PRELIMINARY MATTERS**

Debtors filed voluntary Chapter 11 proceedings on July 31, 2014 ("Petition Date") and have continued to operate their businesses as Debtors in Possession pursuant to 11 U.S.C. Sections 1107 and 1108.

On September 16, 2014, this Court entered an Order Directing the United States Trustee to Appoint an Examiner [DE# 87] ("the Examiner Order"). In Paragraph 2 of the Examiner Order, the Court set forth a number of issues which the Examiner was to investigate and report upon prior to the next hearing on bid procedures, including a) the negotiation and execution of the Asset Purchase Agreement ("APA"); b) the assets to be sold; c) the specific contracts to be assumed and which Debtor is a party and d) whether or not the APA should be amended,

1

clarified or supplemented.

On September 19, 2014, this Court entered an Order Appointing Jennifer Rood, Esq. as Examiner [DE#96].  The Examiner filed her First Report on October 14, 2014, and the Court held hearing on October 16, 2014 regarding bid procedures. On October 23, 2014, this Court entered its Order Granting Emergency Motion to Establish Bid Procedures and Form of Notice (DE#138) ("the Bid Procedures Order.).  A hearing on Debtor's Motion for Sale of Property pursuant to Section 363(b) was set for December 9, 2014; counteroffers and objections were due December 2, 2014. That hearing was subsequently continued to December 15, with counteroffers and objections due December 8, 2014.   No counteroffers nor objections have been filed to date.

## II. THE BID PROCEDURES ORDER

 Pursuant to the Bid Procedures Order, potential bidders were required to execute a Non-Disclosure Agreement (NDA) before receiving access to certain exhibits to the Purchase and Sale Agreement, including information regarding the identity of the Debtor's customers. After the Bid Procedures Order had become final, Debtor share with the Examiner a draft form of NDA.  On information and belief, that draft was also circulated to certain interested bidders, including Coworx. The initial form of the NDA contained a broad non-competition provision which concerned the Examiner because of the likelihood other staffing companies, including some in the same market as the Debtor, would be the most logical bidders for the Debtor's assets.  The Examiner suggested a narrower provision which would simply bar competition arising from confidential information obtained in the due diligence process.    When the Examiner first raised the issue, the Debtor balked at narrowing the provision but subsequently agreed to revise the NDA so that the non-compete provision was narrowly tailored to address competition arising from confidential information obtained through a potential bidder's due

2

diligence process.  At the time the Bid Procedures Order was entered, the Examiner expected that parties who signed the NDA would receive unredacted forms of the exhibits to the Sale Motion, including customer lists. The Examiner subsequently learned the Debtor was providing somewhat redacted customer lists containing financial and demographic information but not customer names. After Coworx filed a Motion to Extend Bidding Deadline, which motion was set for hearing on November 26, 2014, this Court ordered that unredacted exhibits be provided. See DE# 169.  The Court also continued the sale hearing until December 15, 2014.  Following the November 26 hearing, the Debtor provided unredacted exhibits to Coworx and to two other parties who had signed NDA forms and expressed interest in bidding.

### III. THE SALE PROCESS

As part of the Examiner Order, the Court requested the Examiner report on the adequacy of marketing efforts. Following the Examiner's First Report and the October 16 hearing, the Debtor made useful changes to the bid procedures which increased the likelihood of a fair sale process.  The Debtor also took advantage of a web site known as Merger to advertise the sale, which resulted in at least two of the interested parties which signed NDA forms and received due diligence information. The Debtor also consulted regularly with Sam Sacco, an expert in the sale of staffing companies, and provided the Examiner access to Mr. Sacco by phone. Based on the communications shared with the Examiner, it appears the Debtor responded promptly to requests for due diligence information.  It is not clear that any additional marketing was done or that additional marketing would have been useful.

Throughout the sale process, the Examiner has been struck by both Mr. Purtell's obvious lack of interest in courting competing bidders and his legitimate concerns that potential bidders might simply poach the largest customers without ever making a serious bid. This concern was

further compounded by the fact the Debtor's largest customer represented 48% of annual revenues.

In late November 2014, Debtor's counsel shared with the Examiner an email from the largest customer of the Debtor, directed to Mr. Purtell, advising him that the customer "would need to consider alternatives in case the sale of ARS is made to an unrelated bidder." That email was subsequently shared with Coworx. Based on the representations of Coworx counsel, the email caused Coworx to withdraw from the process.

   Debtor has assured the Examiner the email from Debtor's customer was real and was unsolicited. The Examiner has no reason to doubt the veracity of the Debtor or its principal. The Examiner does have concerns that Mr. Purtell's long relationship with the customer, coupled with his resistance to the idea of an unrelated buyer, may have created an atmosphere in which such a communication might be more likely to occur. There is no doubt the customer email had chilling effect on the sale process.  It is also true, however, that a business which relies so heavily on one or two customers is more difficult to market and potentially less appealing to unrelated buyers. On information and belief, interested parties other than Coworx had not yet seen the customer email, yet none of them submitted a counteroffer.

   The Examiner believes the marketing of the assets was appropriate under the circumstances, and subject to the comments above, that the Debtor tried to conduct a fair sale process.

                                             Respectfully submitted,


 Dated: December 9, 2014                    **EXAMINER**

                                            */s/ Jennifer Rood Esq.*
                                            Jennifer Rood, Esq.
                                            BERNSTEIN, SHUR, SAWYER & NELSON

                                      4

670 N. Commercial Street, Suite 108  
P.O. Box 1120  
Manchester, NH  03105-1120  
E-mail address:  jrood@bernsteinshur.com  
Telephone number:  (603) 623-8700  
Fax: (603) 623-7775  

5