**2017 BNH 001**     Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.
_____

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:

ARSN Liquidating Corp. Inc. and
ARN Liquidating Corp., Inc.,
       Debtors

Chapter 11
Bk. No. 14-11527-BAH
Bk. No. 14-11528-BAH
Substantively Consolidated

*Joseph H. Baldiga, Esq.*
*Kate P. Foley, Esq.*
*Attorneys for Wicked Staffing Solutions, LLC*
*Mirick, O'Connell, DeMallie & Lougee, LLP*
*Westborough, Massachusetts*

*Nathan R. Fennessy, Esq.*
*Preti Flaherty Beliveau & Pachios, PLLP*
*Attorney for National Council on Compensation Insurance*
*Concord, New Hampshire*

## MEMORANDUM OPINION

### I.  INTRODUCTION

The Court approved a sale of substantially all of the assets of American Resource Staffing Network, Inc. (the "Debtor")[1] to Wicked Staffing Solutions, LLC ("WSS" or the "Buyer") on December 15, 2014 (Doc. No. 191) (the "Sale Order").  Some twenty months later, the Buyer filed a motion with the Court entitled "Motion of Wicked Staffing Solutions, LLC to Enforce Order On Debtor's Motion to Sell Certain Assets Known as Substantially All the Assets of American Resource Staffing Network, Inc. Free and Clear of Liens, Claims, Interests and

---

[1] American Resource Staffing Network, Inc. ("ARSN") and its related entity American Resource Network, Inc. ("ARN") filed chapter 11 bankruptcy petitions on July 31, 2014.  As part of the sale, both debtors were required to change their names.  On January 21, 2015, the Court granted a motion seeking to change the name of American Resource Staffing Network, Inc. to ARSN Liquidating Corp., Inc. and the name of American Resource Network, Inc. to ARN Liquidating Corp., Inc. (Doc. No. 209), which names are reflected in the above bankruptcy case caption.

Encumbrances Pursuant to 11 U.S.C. § 363(b) and (f) and to Assume and Assign the Real Estate Leases to Buyer Pursuant to 11 U.S.C. § 365(f)" (Doc. No. 366) (the "Motion to Enforce"), wherein WSS seeks an order enforcing the Sale Order against National Council on Compensation Insurance ("NCCI"), on the grounds that NCCI has violated the Sale Order's "free and clear" provisions as NCCI has imputed the Debtor's workers' compensation experience rating to WSS in setting WSS's workers' compensation experience rating.  The Buyer filed a supplement to the Motion to Enforce on September 7, 2016 (Doc. No. 372).  NCCI objected to the Motion to Enforce and its supplement on September 21, 2016 (Doc. No. 375) (the "Objection"), denying that it has violated the Sale Order and stating that it has simply followed its experience rating plan manual, which is filed with and approved by state regulators.  The Court held a hearing on the Motion to Enforce and the Objection on November 4, 2016, and took the matter under advisement.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local Rule 77.4(a) of the United States District Court for the District of New Hampshire.  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

**II. FACTS**

The Debtor owned and operated a staffing company that supplied temporary workers to many businesses in both New Hampshire and Massachusetts, particularly in the food and light industry areas.  At the time the Debtor filed for bankruptcy protection, it employed more than one thousand workers.  The Debtor's bankruptcy filing was precipitated by rising state and federal employment tax obligations and an inability to become current on past-due obligations.  In addition, just prior to its bankruptcy filing, the Debtor lost business due to the crisis involving

the Market Basket grocery store chain;[2] Market Basket stopped ordering produce from its suppliers and, in turn, its suppliers stopped hiring the Debtor's temporary employees. The Debtor ultimately filed for bankruptcy when the Debtor became concerned that another tax levy would force the shutdown of the Debtor's business. At the time it filed for bankruptcy, the Debtor had already been in negotiations to sell its business to WSS.[3]

On December 15, 2014, after having appointed an examiner in the bankruptcy case who filed a report supporting a sale of the Debtor's assets, the Court approved a sale of substantially all of the assets of the Debtor to WSS, which included the sale of customer contracts and employee files for the Debtor's temporary employees. The Sale Order contained the following relevant provisions with emphasis added:

> K.     The sale is authorized pursuant to 11 U.S.C. §[ ]363(b) and (f) and the provisions of such sections have been met.
> …
>
> 5.     The Sale shall be <u>free and clear of any and all</u> liens, claims (as that term is defined in the Bankruptcy Code), mortgages, guarantees, security interests, pledges, charges, taxes (including Federal, State, SUTA and FUTA taxes as well as workers' compensation and other claims pending as of the closing date of the sale), obligations, rights, <u>interests</u> (including any retaining or possessory liens or interests) and encumbrances, whether arising prior to or subsequent to the filing of the Chapter 11 petition initiating this case, whether imposed by agreement, understanding, law, equity or otherwise (<u>collectively, the "Encumbrances"</u>). The Encumbrances from which the Assets is being sold free and clear include, but may not be limited to the liens of the Internal Revenue Service, who consents to this sale and the disputed liens of the State of Massachusetts. <u>The Purchaser is an entirely new and separate entity from the Debtor and is only purchasing the Assets of the Debtor free and clear of the Encumbrances.</u>
>
> 6.     The Buyer is not assuming any liabilities of any kind whatsoever relating to the Assets except as specified in the P & S. This sale through the Bankruptcy Court of substantially all of the Seller's Assets (the "Sale") shall be a <u>sale free and clear of all liens, claims, interests and encumbrances of any kind and nature under 11 U.S.C. §</u>

---

[2] During the summer of 2014, after Market Basket's CEO was fired, employee protests essentially led to the shutdown of all of Market Basket's stores in Massachusetts, New Hampshire, and Maine. "Market Basket: A Business Case Study for Decades," <u>New Hampshire Business Review</u>, Aug. 8, 2014.

[3] WSS is owned by a former employee of ARN and the daughter of the principal of ARSN.

3

> [ ]363(b) and (f), with any such liens, claims, interests or encumbrances to attach to and affect the Sale proceeds to the same extent, and in the same order of priority, as each such lien, claim, encumbrance or interest would attach or affect the Assets under the Bankruptcy Code or other applicable law, subject, in each case, to the Bankruptcy Court's (and any party in interest's) power to determine the amount, validity, extent or priority of any such lien, claim, encumbrance or interest at a later date. The Sale of the Seller's Assets shall be "as is, where is," with no representations or warranties of any kind.
> …
>
> 8.  <u>This Order</u> shall be binding upon, and <u>shall inure to the benefit of</u>, the Debtor and <u>the Buyer</u>, and their respective successors and assigns.
> …
>
> 10[.]  <u>This Order is binding on the holders of</u> all claims, liens, encumbrances and <u>interests.</u>
>
> 11.  This Court shall retain non-exclusive jurisdiction over the parties for the purpose of enforcing the provisions of this Order and for the purpose of resolving any disputes that arise out of this Order.
> …
>
> 15.  A certified copy of this Order authorizing the sale of the Assets free and clear of all liens, claims, encumbrances and interests may be recorded in the appropriate registry of deeds, town office(s) or Secretary of State's office, which Order shall discharge and extinguish all liens and Encumbrances of record, such liens and encumbrances attaching to the sales proceeds, subject in each case to the Court's power to determine the validity, extent or priority of any such lien or encumbrance at a later date. <u>A Certified Copy of this Order may also be presented to any</u> taxing authority or <u>other claimant subject to this order to establish that the Buyer is a new and distinct entity from the Debtor, and is not liable for Encumbrances against the Debtor.</u>

Sale Order at 3-7.  The sale of the Debtor's assets to WSS closed on December 19, 2014.

According to NCCI, it is the nation's most experienced provider of workers' compensation information, tools, and services.  NCCI analyzes industry trends, prepares workers' compensation insurance rate recommendations, assists in pricing proposed legislation, and provides a variety of data products to more than nine hundred insurance companies and nearly forty state governments.  NCCI acts a state licensed advisory organization and is responsible for the development and administration of workers' compensation experience rating plans.

4

After the sale of the Debtor's assets to WSS, NCCI reviewed ownership and other relevant information pertaining to WSS in order to determine a workers' compensation experience rating attributable to WSS. On January 18, 2016, NCCI issued a letter ruling indicating that "the prior experience of American Resource Staffing, Network, Inc. and American Resource Network, Inc. will transfer to [WSS]" (the "Ruling"). NCCI indicated that "[t]his ruling is based on the ownership rule which states that business entities held by common majority ownership are combinable for experience rating purposes." The Ruling indicated that effective November 1, 2015, WSS would have a workers' compensation experience rating modification factor of 1.53.[4]

WSS contested NCCI's Ruling, and, on July 13, 2016, NCCI issued correspondence affirming the Ruling. NCCI cited to Rule 3C (Ownership Changes) of its 2003 "Experience Rating Plan Manual for Workers Compensation and Employers Liability Insurance" (the "Experience Rating Plan") that states that "[u]nless excluded under Rule 2, the experience for any entity undergoing a change in ownership shall be transferred to the experience ratings of the acquiring, surviving or new entity." NCCI also referred WSS to Rule 3E (Treatment of Experience), which provides that "[t]he experience for any entity undergoing a change in ownership will be retained or transferred to the experience ratings of the acquiring, surviving or new entity unless specifically excluded by this Plan." The July 13, 2016, letter indicated that effective August 1, 2016, WSS would have a workers' compensation experience rating modification factor of 1.28.

The parties engaged in subsequent communications but were unable to resolve their dispute. Thereafter, WSS filed the Motion to Enforce, wherein WSS contends that NCCI's decision to attribute the Debtor's workers' compensation experience rating to WSS has resulted

---

[4] See infra for a discussion of workers' compensation experience ratings.

in substantially higher insurance premiums being charged by WSS's various workers' compensation insurers. WSS indicates that if NCCI were to use the "correct" workers' compensation experience rating, its workers' compensation premiums would be $609,902 using the August 1, 2016 rating. Instead, the premiums will be approximately $773,249 using the August 1, 2016 rating. According to WSS, as a result of these higher insurance premiums, the Debtor's estate and creditors are being harmed as the higher premiums are decreasing the profits required to be paid under the earn-out schedule of the Debtor's confirmed plan. WSS is required to pay to the estate 50% of WSS's net profits until 2019. The primary beneficiary of these payments is the Internal Revenue Service.

## III. DISCUSSION

The issue before the Court is whether the Sale Order prohibits NCCI from assigning a workers' compensation experience rating to WSS based on the Debtor's workers' compensation experience rating when the sale of the Debtor's assets to WSS was free and clear of "all liens, claims, interests and encumbrances of any kind and nature." The Court must decide whether the Sale Order protects WSS, as the purchaser of the Debtor's assets, from a form of successor liability, i.e., the imposition of a workers' compensation experience rating based on the Debtor's workers' compensation experience rating, which has resulted in higher workers' compensation insurance premiums for WSS than if WSS had been rated as a completely new company with no prior workers' compensation claims history upon which to base a workers' compensation experience rating.

According to NCCI, the workers' compensation experience rating of an entity is intended to provide a snapshot of the entity seeking to be insured so that insurers can make an underwriting decision as to the appropriate premium to charge. In developing a workers'

6

compensation experience rating, NCCI looks to past payroll and losses to predict future workers' compensation losses.  The workers' compensation experience rating is really a numeric representation of a company's claims experience, and it is one component used to calculate workers' compensation insurance premiums.[5]

Typically, a new company would have a workers' compensation experience rating of 1.00.  Employers with fewer and less severe accidents than the expected average would have a rating of less than 1.00 while employers with additional and more severe accidents than the expected average would have a rating of more than 1.00.  According to NCCI's Ruling and letters to WSS, WSS's workers' compensation experience rating modification factor was 1.53 effective November 1, 2015, and 1.28 effective August 1, 2016.

WSS argues in the Motion to Enforce that the Debtor's workers' compensation experience rating is an "interest" within the meaning of 11 U.S.C. § 363(f), which may not be imputed to WSS as the sale of the Debtor's assets to WSS was free and clear of that interest.  WSS relies on a decision of the United States Bankruptcy Appellate Panel for the First Circuit, Massachusetts Dep't of Unemployment Assistance v. OPK Biotech, LLC (In re PBBPC, Inc.), 484 B.R. 860 (B.A.P. 1st Cir. 2013), and a trend among courts to interpret the term "interest" broadly.

As the BAP explained in its opinion, "[t]he Bankruptcy Code does not define the term 'any interest' as used in § 363(f).  Courts confronted with the task of defining the scope of the term have been unable to supply a precise definition.  Thus, the issue continues to be addressed on a case-by-case basis …" PBBPC, 484 B.R. at 867.  In that case, the bankruptcy court was faced with the question of whether a sale order prevented the Massachusetts Department of

---

[5] Other components include a company's payroll and employee job classifications, which are based on the specific type of work that employees perform.  NCCI determines both classification ratings and experience ratings.

Workforce Development, Division of Unemployment Assistance (the "State") from imputing the debtor's unemployment experience rating to the purchaser of the debtor's assets, as a "successor employer" under Massachusetts state law, in determining the unemployment tax contributions that the purchaser would have to make to the State.  The bankruptcy court held that the State was barred from taxing the purchaser at the debtor's unemployment contribution rate.  In considering the bankruptcy court's ruling on appeal, the BAP held that the State's right to tax a purchaser of the debtor's assets based upon the debtor's unemployment experience rating was in the nature of an "interest" of which the debtor's assets could be sold free and clear.  The BAP specifically concluded that "the term 'any interest' as used in § 363(f) is sufficiently elastic to include the Debtor's experience rate."  Id. at 869.  In so ruling, the BAP stated it was following the "the more expansive reading of the term 'any interest'" that has been advanced by the Second, Third, Fourth, and Seventh Circuits.  Id. (citing Indiana State Police Pension Trust v. Chrysler LLC (In re Chrysler LLC), 576 F.3d 108 (2d Cir. 2009), cert. granted and judgment vacated on other grounds, 558 U.S. 1087 (2009); Precision Indus., Inc. v. Qualitech Steel SBQ, LLC, 327 F.3d 537 (7th Cir. 2003); In re Trans World Airlines, Inc., 322 F.3d 283 (3d Cir. 2003); Folger Adam Security Inc. v. DeMatteis/MacGregor, JV, 209 F.3d 252 (3d Cir. 2000); United Mine Workers of Am. 1992 Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.), 99 F.3d 573 (4th Cir. 1996)).

WSS urges the Court to follow the BAP's reasoning and read the "any interest" language in § 363(f) to include NCCI's workers' compensation experience rating.  As noted by the bankruptcy court in PBBPC, experience ratings are "atypical" interests in property.  See PBBPC, 484 B.R. at 864.  Nonetheless, the BAP found that the unemployment contribution rate was an "interest" within the meaning of § 363(f), and an interest of which the bankruptcy court could approve a sale free and clear under § 363(f).  The bankruptcy court below, and the BAP on

8

appeal, found the imposition of successor liability on the purchaser (i.e., the purchaser being saddled with an increased unemployment contribution rate following the purchase of the debtor's assets simply based on the transfer of the debtor's assets alone and not because the purchaser continued the debtor's business) to be untenable.  Id. at 869-70 (quoting the bankruptcy court decision, which stated "there is a good reason to view this right as an interest in estate assets:  it imposes a debtor's experience rating on the buyer precisely because, and only because, the buyer purchased assets of the bankruptcy estate").

NCCI acknowledges that WSS has been burdened with the Debtor's workers' compensation experience rating simply because WSS purchased substantially all of the Debtor's assets and for no other reason.  NCCI explains that state regulators have observed that a change in ownership, in and of itself, has no inherent effect on the operation of a business and, therefore, workers' compensation claims.  NCCI relies on the fact that its Experience Rating Plan permits NCCI to transfer the workers' compensation experience rating of a seller to "the acquiring, surviving or new entity unless specifically excluded by this Plan."  It acknowledges that its Experience Rating Plan does not have any exceptions for transfers made incident to a bankruptcy sale.

NCCI argues that its use of the Debtor's workers' compensation experience rating is distinguishable from the State's use of the debtor's unemployment contribution rate in PBBPC.  NCCI focuses on the BAP's observation that "the record reflects that the transfer of an employer's contribution rate to a successor asset purchaser is really an attempt to recover the money that the predecessor employer would have paid if it had continued in business."  Id. at 869.  NCCI argues that, in the workers' compensation arena, its use of a debtor's workers' compensation experience rating is not intended to recover for its benefit (or the benefit of anyone else) the amounts a debtor would have paid had it stayed in business.  Instead, a predecessor's

9

workers' compensation experience rating is being used simply as a measure of potential future loss history in order to underwrite the successor entity and determine an appropriate workers' compensation insurance premium.

In the Court's view, the Debtor's workers' compensation experience rating is similar enough to the unemployment tax contribution rating in PBBPC so that it too constitutes an "interest" within the meaning of § 363(f) of the Bankruptcy Code.  Buyers at § 363 sales should not be burdened (or benefitted) by a debtor's workers' compensation experience rating where the sale order makes clear (as the Sale Order did in this case) that the buyer is an entirely new and separate entity from the debtor and is only purchasing the debtor's assets free and clear of all liens, claims, interests and encumbrances of any kind and nature.

## IV.  CONCLUSION

The Court concludes that the Debtor's workers' compensation experience rating cannot be imposed upon WSS as the purchaser of substantially all of the Debtor's assets through a § 363(f) sale because the Debtor's workers' compensation experience rating is an "interest" of which the Debtor's assets were sold free and clear in 2014.  For that reason, WSS's Motion to Enforce shall be granted to the extent that WSS seeks a determination that the sale to WSS, pursuant to the Sale Order, was free and clear of the Debtor's workers' compensation experience rating as that term is defined in NCCI's Experience Rating Plan.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate order consistent with this opinion.

ENTERED at Manchester, New Hampshire.

Date:   January 20, 2017                    /s/ Bruce A. Harwood
                                            Bruce A. Harwood
                                            Chief Bankruptcy Judge